UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FU SHIH LIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02158-JPH-DML |
| | ) |
| SHERATON LICENSE OPERATING COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Fu Shih Lin slipped and fell while exiting the shower in his room at a Sheraton Hotel in Indianapolis. He claims that Sheraton's failure to maintain the room in a reasonably safe condition caused the accident. Sheraton has moved for summary judgment. Dkt. [31]. Because Mr. Lin has not established triable issues of fact on the elements of breach and causation for his negligence claim, that motion is **GRANTED.**

**I.
Facts and Background**

Because Sheraton has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

In May 2016, Mr. Lin and his family traveled to Indianapolis to visit his daughter Grace. Dkt. 41-2 at 33 (Mr. Lin Dep. 31:19–25). Late in the

1

afternoon on either his first or second day at the Sheraton, Mr. Lin took a shower. *Id.* at 38 (36:8–19).

Mr. Lin had not showered in the bathroom before, *id.* at 39 (37:18–25), and both he and Grace did not know if anyone else had used that shower before him, *id.*; dkt. 41-1 at 38 (Grace Dep. 52:17–21). Mr. Lin noticed nothing "abnormal" about the tub's floor before his shower. Dkt. 41-2 at 46 (Mr. Lin Dep. 44:5–7). He "didn't really pay attention" to the cleanliness of the bathtub and did not "try[] to figure it out [if] it was dirty or not." *Id.* at 41 (39:15–16). When he started his shower, Mr. Lin looked for "some kind of plastic thing that you put . . . in the bathtub . . . to prevent[] people from falling; but [he] couldn't find any." *Id.* at 40–41 (38:25–39:4). He did not ask for a mat from the front desk because he "didn't know that [the] water was so slippery." *Id.* at 43 (41:12–16).

After entering the shower, Mr. Lin "felt the water was very slippery" either "right in the beginning," *id.* at 40 (38:21–24), or in "the middle of" his shower, *id.* at 43 (41:18–25). At any rate, Mr. Lin "ha[d] never encountered such slippery water." *Id.* at 43 (41:18). During the shower, he "lathered up the [hotel's complimentary] soap on [his] arm, and the water did not clean up . . . the oil in the soap." *Id.* at 44 (42:8–10). Unlike his shower at home, where the "water would just clean up the soap right away" causing the "soapy feeling" to be "just gone," here the "slippery feeling there [was] left there." *Id.* (42:12–16). During his shower, Mr. Lin felt "it was slippery under [his] feet." *Id.* (42:12).

And because he "felt the . . . slipperiness," he "came out of it right away" since he "felt very uncomfortable with it." *Id.* (42:17–23).

Mr. Lin finished showering and dried off. *Id.* at 41 (39:4–5). When he tried to step out of the tub, however, "both feet slipped." *Id.* at 48 (46:12–18). Mr. Lin fell and his head "directly hit the floor." *Id.* at 49 (47:8–11). After the fall, his "whole body lost consciousness," and his "face was full of blood." *Id.* at 46 (44:20–25). Within ten seconds after the fall, Mr. Lin called out for help. *Id.* at 52 (50:12–14). Minutes later, hotel staff and members of his family arrived on the scene, but no one saw standing water in the tub. Dkt. 41–1 at 17, 42 (Grace Dep. 29:1–6, 60:9–12); dkt. 41–3 at 9 (Sophie Dep. 29:19–25). Soon an ambulance arrived and took Mr. Lin to the hospital. Dkt. 41-2 at 54 (Mr. Lin Dep. 52:5–11).

The day after the fall, Grace took a video of the shower where Mr. Lin fell, and "it appeared the tub was not draining or not draining properly." Dkt. 41-1 at 40 (Grace Dep. 55:16–25).

Mr. Lin filed this action in state court, alleging that Sheraton negligently failed to maintain his room's bathtub. Dkt. 1-1. Sheraton removed the case to this Court and moved for summary judgment. Dkt. 1; dkt. 31.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the

3

court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).

## III.
## Analysis

Mr. Lin alleges that Sheraton was negligent when it "maintained its premises in an unreasonable and unsafe condition, causing [him] to fall." Dkt. 1-1 at 5 ¶ 1. "Prevailing on a negligence claim requires fulfillment of three elements: 1) duty owed to plaintiff by the defendant; 2) breach of duty by allowing conduct to fall below the applicable standard of care; and 3) compensable injury proximately caused by defendant's breach of duty." *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). Mr. Lin was an invitee so Sheraton owed him "the duty to exercise reasonable care for [his] protection while . . . on the premises." *Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 66 (Ind. 2018). Sheraton argues that it is entitled to summary judgment because no

reasonable jury could find that it breached its duty or that any breach caused Mr. Lin's accident. Dkt. 42 at 1. The Court must apply Indiana law by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Webber*, 923 F.3d at 482.

### A. Breach of Duty

"[T]he element of breach of duty . . . is determined by the reasonableness under the circumstances of the actions of the alleged tortfeasor." *Pfenning v. Lineman*, 947 N.E.2d 392, 403 (Ind. 2011). To determine what constitutes breach in a premises liability action, Indiana has adopted the Restatement (Second) of Torts §§ 343–343A (Am. Law Inst. 1975). *See Roumbos,* 95 N.E.3d at 66. Under the Restatement, Sheraton breached a duty owed to Mr. Lin if it did not exercise reasonable care to protect him from a property condition (i) involving a nonobvious and unreasonable risk of harm (ii) that Sheraton knew or should have known about through the exercise of reasonable care. *Id.*

### 1. Slippery Water

Mr. Lin argues that Sheraton breached its duty because the water was unusually slippery, s*ee* dkt. 40 at 9, and has designated evidence that "the water was very slippery," dkt. 41-2 at 40 (Mr. Lin Dep. 38:21–24), and that he "ha[d] never encountered such slippery water," *id.* at 43 (41:18). He also felt that the water did not clean off the "soapy" and "slippery feeling." *Id.* at 44 (42:12–16). Sheraton argues that it is entitled to summary judgment because a

5

slippery tub does not constitute an unreasonable risk of harm or defective condition. *See* dkt. 32 at 16–22.

Indiana courts have addressed bathtub slip and fall accidents. In *Lincoln Operating Co. v. Gillis*, 114 N.E.2d 873, 878 (Ind. 1953), the Indiana Supreme Court upheld a verdict in the plaintiff's favor when the plaintiff had slipped and fallen in a hotel bathtub. The issues on appeal focused on whether there was contributory negligence by the plaintiff. *Id.* at 875. The court held that until an invitee has "notice to the contrary, [he] ha[s] the right to assume that the hotel operator . . . used due care in seeing to it that the bathtub [i]s not in a dangerous condition." *Id.* at 876. The court reasoned that while common experience teaches that wet tubs are inherently slippery and adding soap makes a wet tub more slippery than water alone, there was "conflicting evidence as to whether or not the bathtub had been cleaned" before the plaintiff slipped and fell. *Id.* at 878. The plaintiff had not used any soap yet, the bottom of the tub was "as slick as glass"—"so slick she couldn't get out at first"—and there was a "scummy and dirty" substance on the bottom of the tub that was "like grease." *Id.* at 874–75.

In *Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189, 1195 (Ind. Ct. App. 2011), however, the Indiana Court of Appeals affirmed summary judgment for defendants in a hotel bathtub slip-and-fall case. The plaintiff testified that "the bathtub was clean when he took his shower, and he could not specify anything about the tub that might have caused his fall, other than it being slippery." *Id.* at 1193. Indeed, "the only evidence . . . [was] that the bathtub became slick

6

while [the plaintiff] showered." *Id.* Distinguishing *Gillis*, the court held that a plaintiff must "present[] evidence of a specific failure on the hotel's part that led to her fall and injury." *Id.* Because the plaintiff had presented "no evidence that [the defendants] did or failed to do something that unreasonably increased" the "inherent" risk of a tub's slipperiness, the plaintiff could not establish breach. *Id.*

Here, as in *Hale*, Mr. Lin has presented no evidence that Sheraton did or failed to do something that unreasonably increased the inherent risk of the tub's slipperiness. He has not designated evidence that there was soap or some other foreign substance on the floor of the tub when he entered it; indeed, he noticed nothing "abnormal" about the tub's floor before his shower. Dkt. 41-2 at 46 (Mr. Lin Dep. 44:5–7). And Mr. Lin slipped and fell only after he had showered, used soap, and dried off. *Id.* at 40, 41, 48 (38:21, 39:4–5, 46:1–7). Mr. Lin argues that standing water in the tub created an unreasonably dangerous condition. Dkt. 40 at 9. But "[i]t is . . . a matter of common experience that wet soap acts as a lubricant and makes a wet bathtub much more slippery than water alone," *Gillis*, 114 N.E.2d at 876, so the slipperiness that Mr. Lin experienced while showering with soap and water does not constitute breach in the absence of a "specific failure on the hotel's part," *Hale*, 956 N.E.2d at 1193.

Mr. Lin argues that standing water in the tub was the specific failure that establishes breach. Dkt. 40 at 8. But the designated evidence does not support that finding. Mr. Lin testified about "slippery water;" he did not

7

mention standing water.[1]  *See* dkt. 32 at 9; dkt. 42 at 9; dkt. 41-2.  Grace's testimony that Mr. Lin said something about standing water while in the hospital is not admissible, *see* dkt. 41-1 at 42 (Grace Dep. 60:7-8) (claiming that Mr. Lin told her "there was standing water and it wasn't draining."), so it cannot be considered on summary judgment, *see Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).  Mr. Lin's statement is inadmissible hearsay because it is a statement made by an out-of-court declarant, has been offered for the truth of the matter asserted, and does not satisfy any hearsay exception.  *See* Fed. R. Evid. 801.  Moreover, no one observed standing water in the tub or evidence of slow drainage on the day of accident.  *See* dkt. 41–1 at 42 (Grace Dep. 60:9–12); dkt. 41–3 at 16 (Sophie Dep. 50:18–22).

    The only evidence that could support the inference that there was standing water in the tub at the time of the accident is Grace's testimony that she observed standing water the day after the accident.  Grace described a video[2] that she took the day after the accident as showing the tub "not draining or not draining properly."  Dkt. 41-1 at 40 (Grace Dep. 55:16–25).  This evidence is not enough by itself to support a breach of Sheraton's duty because "specific factual evidence . . . *on each element* must be designated" to overcome summary judgment on a negligence claim.  *Hayden v. Paragon Steakhouse*, 731

---

[1] While it's not clear what Mr. Lin meant when he referred to "slippery water," it can't mean standing water.  He testified that the water felt slippery as soon as he got in the shower, dkt. 41-2 at 40 (Mr. Lin Dep. 38:22–24), and repeatedly described the water's slipperiness, *id.* at 43, 44, 52, 71 (41:15–25, 42:12–23, 50:8–11, 69:24–25), but never said anything about the quantity of water, *see* dkt. 32 at 9.

[2] Neither party submitted that video recording into the record.

N.E.2d 456, 458 (Ind. Ct. App. 2000) (emphasis in original). An inference of breach "is not reasonable when it rests on no more than speculation or conjecture," *id.*, and Grace's vague testimony about a video taken at a different time does not rise above that level, *see Taylor v. Cmty. Hosps. of Indiana, Inc.*, 949 N.E.2d 361, 365 (Ind. Ct. App. 2011) (citation omitted).

### 2. Obviousness of any Danger

Even if there were standing water in the tub at the time of the accident and even if it made the tub unreasonably dangerous, Sheraton is still entitled to summary judgment because any standing water was obvious.

Mr. Lin argues that the presence of standing water shows that the tub either failed to drain or drained slowly, so Sheraton breached its duty. Dkt. 40 at 12–13. Sheraton disputes the existence of any drainage problems, dkt. 42 at 9, and contends that standing water cannot establish breach as a matter of law because the risk is obvious, dkt. 32 at 8. Mr. Lin has not directly responded to Sheraton's contention that this constituted an obvious risk. *See* dkt. 40.

A landowner "is generally not liable for injuries resulting from 'known or obvious' dangers." *Roumbos*, 95 N.E.3d at 66 (citing Restatement § 353A(1)). A risk is "obvious" if "both the condition and the risk are apparent to, and would be recognized by, a reasonable person in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Id.* at 67 (citing Restatement § 343A cmt. b). Whether a danger is obvious is not a subjective or plaintiff-specific inquiry. *Couvillion v. Speedway LLC*, 673 Fed. App'x 558, 559 (7th Cir. 2016) (citing *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 20 (Ind. Ct. App.

9

2015)). Instead, the obviousness inquiry "asks how owners of business premises should expect reasonable customers to understand and react to risks." *Id.*

Mr. Lin argues that the tub here was dangerous because "standing water in the tub basin" from the drain issues "caused the shower floor to become *unusually* slippery." Dkt. 40 at 8 (emphasis in original). But even if standing tub water could constitute an unreasonably dangerous condition, that danger was obvious under the circumstances.

Until an invitee has "notice to the contrary, [he] ha[s] the right to assume that the hotel operator . . . used due care in seeing to it that the bathtub [i]s not in a dangerous condition." *Gillis*, 114 N.E.2d at 876. Here, Mr. Lin had "notice to the contrary" because of the obviousness of the condition. Unlike *Gillis*, where the plaintiff fell upon entering the tub when "her feet hit something as slick as glass . . . before she could touch the shower curtain," 114 N.E.2d at 874, Mr. Lin showered, lathered up with soap, rinsed, and dried off before he slipped and fell, *see* dkt. 41-2 at 41, 44 (Mr. Lin Dep. 39:4–5, 42:8–9). That's long enough for a reasonable guest to see any standing water and recognize any danger associated with it. *See Gillis*, 114 N.E.2d at 876 ("[I]t is a matter of common experience that water makes an enamel or porcelain tub more slippery than a dry tub . . . ."). As a result, the danger from the undrained water constitutes an obvious risk.[3]

---

[3] Because the danger from the slow-draining water was obvious, the Court does not address whether Mr. Lin knew about the risk.

10

Indiana courts recognize an exception to the obvious-danger rule "if a reasonable landowner would anticipate the harm despite the . . . danger's obviousness." *Roumbos*, 95 N.E.3d at 66 (citing Restatement § 343A(1)). "That exception applies in two situations." *Smagala v. Embassy Suites Mgmt. LLC*, No. 1:17-cv-03648-JPH-DLP, 2020 WL 208804, at *4 (S.D. Ind. Jan. 14, 2020). First, it applies when a landowner "has reason to expect that the invitee's attention may be distracted so that she will not discover or will forget the obvious danger." *Id.* (citing Restatement § 343A cmt. f). It also arises when a landowner "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable person in that position the advantages of doing so would outweigh the apparent risk." *Id.*

For the first situation, Mr. Lin has not designated any evidence showing that Sheraton had reason to expect that a distraction would cause him to forget the obvious danger. In *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1267 (Ind. Ct. App. 2002), the Indiana Court of Appeals affirmed summary judgment, in part because "the parties ha[d] designated no facts" compelling the court to apply the distraction doctrine. The Seventh Circuit has similarly directed that the Restatement's "distraction exception will only apply . . . where evidence exists from which a court can infer that [the] plaintiff was actually distracted." *Dunn v. Menard, Inc.*, 880 F.3d 899, 909 (7th Cir. 2018) (quoting Illinois law applying Restatement § 343A). Even if showering in a new environment may involve distractions, none can be inferred from the designated evidence here. No evidence suggests that anything drew Mr. Lin's

11

attention *away* from any slipperiness caused by standing water. Instead, he focused almost exclusively *on* slipperiness. *See, e.g.*, dkt. 41-2 at 43–44 (Mr. Lin Dep. 41:15–42:23) ("I felt the slip – slipperiness, so I came out"). Without designated evidence of a reason for Sheraton to expect a distraction and with no distraction identified here, Sheraton could "reasonably assume" that Mr. Lin would "protect himself by the exercise of ordinary care." Restatement § 343A cmt. e.

For the second situation when the exception can apply, Sheraton had no reason to expect that a guest would decide that the advantages of exiting a shower with standing water would outweigh the risks of other alternatives, such as waiting to see if the water would drain or calling out for help. Indeed, "[t]his situation applies when the 'only other choice' is worse than facing the obvious risk." *Smagala*, 2020 WL 208804, at *4 (citing *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 472 (7th Cir. 1988)). That's not the case here. Mr. Lin said he "came out of [the tub] right away" after turning off the water. Dkt. 41-2 at 43, 48 (Mr. Lin Dep. 41:21, 46:1–7). And he has designated no facts indicating that potential alternatives available to him were worse. Thus, Sheraton could reasonably expect its guests to choose a safer alternative before taking the obvious risk of stepping out of standing water over the ledge of a slippery shower.

In short, the danger from slow-draining water in a bathtub was obvious, and no reasonable jury could find from the designated evidence that Sheraton

should have anticipated the harm despite that obviousness. *See* Restatement § 343A cmt. f. Sheraton is therefore entitled to summary judgment.

### B. Causation

Mr. Lin's negligence claim also fails because he has not shown causation. Under Indiana law, negligence demands a "causal connection between the negligence and the hurt." *Peters v. Forster*, 804 N.E.2d 736, 739 (Ind. 2004) (citation omitted). "This element requires, at a minimum, causation in fact— that is, that the harm would not have occurred 'but for' the defendants' conduct." *Taylor*, 949 N.E.2d at 364 (citation omitted). "[E]vidence establishing a mere possibility of cause or which lacks certainty or probability is not sufficient evidence by itself to support a verdict." *Id.* at 365 (citation omitted). However, the breach need not be the sole cause of the injuries. *See Smith v. Beaty*, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994). "Causation may be proven by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than mere speculation." *Martin v. Ramos,* 120 N.E.3d 244, 251 (Ind. Ct. App. 2019) (quoting *Smith*, 639 N.E.2d at 1034).

Sheraton argues that a jury cannot infer causation here because Mr. Lin's evidence allows for only impermissible "inferential speculation" on what caused his fall. Dkt. 42 at 13–14 (citing *Adkins v. Meijer Stores Ltd. P'ship*, 256 Fed. App'x. 845 (7th Cir. 2007)). Mr. Lin responds that no inferential speculation is required because he has attributed his fall to a specific condition—the slippery bathtub. Dkt. 40 at 8. And he designates Grace's

13

testimony as circumstantial evidence that standing water led the bathtub to become unusually slippery, which caused Mr. Lin's fall. *Id.*

Here, Grace's testimony calls for an impermissible inference on causation. The video that Grace vaguely described as showing the tub "not draining or not draining properly" was not from the time of the shower. Dkt. 41-1 at 40 (Grace Dep. 55:16–25). This evidence therefore "lacks reasonable certainty or probability" and only establishes a "mere possibility of cause." *Taylor*, 949 N.E.2d at 365. That is not sufficient evidence by itself to support a jury finding on causation. *See id.*; *Adkins*, 256 F. App'x at 847–48 ("[C]ausation may not be inferred merely from the existence of an allegedly negligent condition," and a "reasonable factual inference cannot rest on speculation or conjecture alone.").

Mr. Lin's testimony also "reflects no direct connection between an identified defect . . . and h[is] resulting injury." *Adkins*, 256 F. App'x at 847. He only cryptically testified that he "felt the . . . slipperiness" before exiting, and then "both feet slipped." Dkt. 41-2 at 44, 48 (Mr. Lin Dep. 42:19–20, 46:12–18). He attributed his fall solely to the "slippery water" that he "felt" under his feet. *Id.* at 40, 43, 44 (38:23–24, 41:15–21, 42:12). "The lack of specificity in this testimony distinguishes [Mr. Lin's] statements from those made by plaintiffs whose cases survived summary judgment." *Adkins*, 256 F. App'x at 847 (citing Indiana cases where plaintiffs pointed to things like ice, grease, and stones that caused them to slip); *see Gillis*, 114 N.E.2d at 875 (slipping on something "just like grease"). And the Court has no obligation "to fill in

14

evidentiary gaps that [Mr. Lin] left wide open." *Adkins,* 256 F. App'x at 848. Since Mr. Lin has introduced insufficient evidence to prove causation—an essential element of the case—Sheraton is entitled to summary judgment.

### IV.
### Conclusion

Because Mr. Lin has not established a genuine issue of material fact for the elements of breach and causation in his negligence claim, Sheraton's motion for summary judgment is **GRANTED**. Dkt. [31]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 10/26/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Katherine M. Haire
REMINGER CO. LPA (Indianapolis)
khaire@reminger.com

Ronald A. Mingus
REMINGER CO. LPA (Indianapolis)
rmingus@reminger.com

Michael W. Phelps
STEWART PHELPS WOOD
mike@spwinjurylaw.com